[No. 25845-9-III.  Division Three.  May 15, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE SHOEMAKER CASTILLO, *Appellant*.

*Stephanie C. Cunningham*, for appellant.

*Ronald S. Zirkle, Prosecuting Attorney*, and *Kevin G. Eilmes, Deputy*, for respondent.

¶1 SWEENEY, J. — The defendant in this case was convicted of failing to register as a sex offender. He challenges the sufficiency of the evidence to support his conviction. And he challenges the statutory authority of the sentencing court to add a term of community custody to his term of confinement. The legislature amended and renumbered one

statute authorizing the imposition of community custody but failed to correct the numbering in a related statute. As a result, the related statute referred to the wrong section of the newly amended and renumbered statute. We conclude that the evidence here is sufficient to support the conviction. And we conclude that RCW 9.94A.715(1) (the related statute) authorizes the imposition of a term of community custody here. We therefore affirm the conviction and the term of community custody.

## FACTS

¶2 Jose Shoemaker Castillo is a convicted sex offender. He is therefore required to register his home address with the sheriff's department in the county where he lives. RCW 9A.44.130(1)(a). And he is required to notify the sheriff's department of any change in address within 72 hours of moving. RCW 9A.44.130(5)(a).

¶3 Mr. Castillo reported his address on August 8, 2006, as 610 East Arlington Avenue, Apartment 152, Yakima, Washington. The apartment belonged to his sister, Ashley Castillo. She lived there with her children, her sister, and her sister's children.

¶4 Police went to the apartment two weeks later to serve an arrest warrant on Mr. Castillo. Ms. Castillo told the officers that Mr. Castillo did not live at the apartment and that he was not welcome there. She allowed the officers to search the apartment for Mr. Castillo.

¶5 The officers searched the apartment but did not find Mr. Castillo. They also did not see any male clothing or accessories or any other indication that a male lived in the apartment. They did find Mr. Castillo's father. He said that he had not seen Mr. Castillo at the apartment for a couple of weeks.

¶6 The State charged Mr. Castillo with failure to register as a sex offender. A jury found him guilty as charged. And the trial court sentenced him to 49 months of confinement, followed by a term of community custody.

## DISCUSSION

INSUFFICIENT EVIDENCE

¶7 Mr. Castillo first argues that the State failed to prove that he no longer lived at his registered residence and that his residence had changed. He also argues that the State did not prove that he knowingly failed to notify the sheriff's department that he had moved to a new address.

■ ¶8 The standard of review for sufficiency of the evidence is substantial evidence. *State v. Rangel-Reyes*, 119 Wn. App. 494, 499, 81 P.3d 157 (2003); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence are equally reliable. *State v. Lubers*, 81 Wn. App. 614, 619, 915 P.2d 1157 (1996).

■ ¶9 The State must show that Mr. Castillo (1) changed his residence on or after August 8, 2006, (2) knowingly failed to provide written notice of the change of his address to the Yakima County sheriff's department within 72 hours of moving, and (3) had previously been convicted of a sex offense that required registration. RCW 9A.44.130(1)(a),[1] (5)(a),[2] (11)(a).[3] Mr. Castillo had previously been convicted of a sex offense that required registration.

CHANGE OF RESIDENCE

¶10 Mr. Castillo contends that the State failed to show that he changed his residence. Officer Michael Mervis testi-

---

[1] "Any adult . . . convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence." RCW 9A.44.130(1)(a).

[2] "If any person required to register pursuant to this section changes his . . . address within the same county, the person must send signed written notice of the change of address to the county sheriff within seventy-two hours of moving." RCW 9A.44.130(5)(a).

[3] "A person who knowingly fails to comply with any of the requirements of this section is guilty of a class C felony if the crime for which the individual was convicted was a felony sex offense as defined in subsection (10)(a) of this section." RCW 9A.44.130(11)(a).

fied, "I did not see any male clothing [at the apartment]. His sister lives there with some children. Saw lots of female clothing and lots of toys and baby clothes." Report of Proceedings (RP) at 55. Officer Mervis did not find any indication that any male lived at the apartment. RP at 56.

¶11 Officer Taren Miller testified likewise:

Q   Did you find any men's clothing anywhere in that house?

A   I don't believe so. I searched the one - the south bedroom upstairs, the bathroom. I mean, I didn't get into drawers, lifting items in the closet or anything like that.

. . . .

Q   Did you see any shaving equipment, men's personal care items at all, anywhere in the bathroom?

A   I didn't observe any, no.

RP at 72. Officer Mervis also related Ms. Castillo's statements to him:

She told me that [Mr. Castillo] does not live here. He hasn't been here in over a month. He's not welcome here. I don't want his problems, and so forth. He has no clothes here or any of his belongings.

RP at 140. And he testified that Mr. Castillo's father said the same thing: "I asked Dad if Jose was living there, and he said, no." RP at 142. Officer Miller also testified that Ms. Castillo told him that Mr. Castillo did not live with her. RP at 145. A jury could reasonably infer from this testimony that Mr. Castillo had changed his residence.

KNOWING FAILURE TO PROVIDE NOTICE

¶12 Mr. Castillo denied that he knowingly failed to register. "Knowingly" means "[(1)] he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or [(2)] he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b). Mr. Castillo had registered several times before. Mr. Castillo testified that he regis-

tered his sister's address as his residence when he left jail and that he registered as a transient with the sheriff's department every week earlier in the year. It was then reasonable for the jury to infer from this that he knew the registration requirements.

¶13 And the State produced the testimony of a law enforcement specialist, Jackie Husk. She worked at the Yakima County sheriff's department. Ms. Husk testified that the sheriff's department did not receive a change of address notice from Mr. Castillo after August 8.

¶14 The State's showing here supports the jury's finding that Mr. Castillo knowingly failed to notify the sheriff's department of his change of address.

COMMUNITY CUSTODY—COURT'S STATUTORY AUTHORITY

■■■ ¶15 Mr. Castillo next argues that the sentencing court did not have statutory authority to sentence him to a term of community custody. He contends that the plain language of RCW 9.94A.545 requires a term of community custody only for offenders convicted under RCW 9A.44-.130(10)(a). He argues that he should not have been sentenced to community custody because he was not convicted under RCW 9A.44.130(10)(a).

¶16 RCW 9.94A.545 (community custody) authorizes the court to impose a term of community custody as set forth in RCW 9.94A.715 (community custody conditions) if a person is found guilty of failure to register under subsection (10)(a) of RCW 9A.44.130 (sex offender registration statute). RCW 9.94A.545(2).

¶17 The problem here results from a legislative amendment to one statute (RCW 9A.44.130(9)) but the legislature's failure to change other statutes that refer to the now amended statute. Former RCW 9A.44.130(9)(a)(i) (2005) defined the term "sex offense" to include failure to register as a sex offender. The failure-to-register-as-a-sex-offender provision of the same statute changed as did the numbering in 2006; so RCW 9A.44.130(10)(a) became RCW 9A.44-

.130(11)(a). Laws of 2006, ch. 129, § 2. And the new RCW 9A.44.130(10)(a)(i) lists failure to register as a kidnapping offender as a sex offense, but not failure to register as a sex offender. So if read literally, failing to register as a kidnapping offender is a "sex offense" but failure to register as a sex offender is not. Simply put, that does not make sense. *State v. King*, 111 Wn. App. 430, 436, 45 P.3d 221 (2002).

¶18 Even a cursory review of legislative history here suggests to us that the legislature did not intend this result. We will not add to or subtract from the clear language of a statute even if we believe the legislature intended something else but did not adequately express it. *Wash. State Coal. for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 904, 949 P.2d 1291 (1997). We will, however, add or subtract language if doing so is required to make the statute rational. *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001) (citing *State v. Taylor*, 97 Wn.2d 724, 728, 649 P.2d 633 (1982)). And we will avoid a literal reading of the statute if it would result in an unlikely, absurd, or strained interpretation. *State ex rel. Royal v. Bd. of Yakima County Comm'rs*, 123 Wn.2d 451, 462, 869 P.2d 56 (1994); *King*, 111 Wn. App. at 436. Here, the result dictated by the literal language of the statute is, at least, unlikely.

¶19 An earlier version of the sex offender registration statute clearly required community custody for those found guilty of failing to register as a sex offender. RCW 9.94A.545(2); former RCW 9A.44.130(10)(a) (2005). The legislature also defined "sex offense" to include failure to register as a sex offender under our earlier version of the sex offender registration statute. Former RCW 9.94A-.030(41)(a)(i) (2005); former RCW 9A.44.130(9)(a)(i) (2005). And the amendments to the sex offender registration statute do not suggest a legislative intent to remove the court's authority to impose a term of community custody on a person found guilty of failure to register as a sex offender. The legislative amendment just added a provision to the middle of the statute, causing the shift in the numbering.

LAWS OF 2006, ch. 129, § 2. The failure-to-register-as-a-sex-offender provision shifted from subsection (10)(a) to subsection (11)(a). *Id.* Finally, the current form of the sex offender registration statute "requires the court to impose a term of community custody for failure to register." S.B. REP. on Second Substitute S.B. 6319, at 2, 59th Leg., Reg. Sess. (Wash. 2006).

¶20 We conclude then that the courts have authority to impose a term of community custody upon persons found guilty of failure to register as a sex offender. Subsection (2) of the community custody statute should read accordingly: "If the offender is guilty of failure to register under RCW 9A.44.130[(11)(a)], the court shall impose a term of community custody under RCW 9.94A.715." RCW 9.94A.545(2). And the Sentencing Reform Act definition of "sex offense" should read: " 'Sex offense' means [a] felony that is a violation of chapter 9A.44 RCW other than RCW 9A.44-.130[(12)]." RCW 9.94A.030(42)(a)(i).

¶21 Here, Mr. Castillo was found guilty of failure to register under RCW 9A.44.130(11). The court then had authority to impose a term of community custody under the community custody statute. RCW 9.94A.545(2).

¶22 Here, the court sentenced Mr. Castillo to the Department of Corrections for a sex offense under a statute other than RCW 9.94A.712. The court was therefore required to sentence him to a term of community custody as a result. RCW 9.94A.715(1).

¶23 Accordingly, we conclude that the sentencing court here had authority, indeed an obligation, to impose a term of community custody for Mr. Castillo's sex offense—failure to register as a sex offender.

¶24 Affirmed.

SCHULTHEIS, C.J., and THOMPSON, J. PRO TEM., concur.