[No. 35928-6-II. Division Two. August 5, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. DALE E. HALE, *Appellant*.

300

*Peter B. Tiller* (of *The Tiller Law Firm*), for appellant.
*David J. Burke, Prosecuting Attorney*, for respondent.

¶1 VAN DEREN, C.J. — Dale Hale appeals his convictions and exceptional sentences for second degree assault and attempting to elude a police vehicle. He argues that (1) the trial court abused its discretion by imposing an exceptional sentence, (2) the exceptional sentencing statute is unconstitutional, (3) the trial court violated his speedy trial rights, (4) the State produced insufficient evidence to prove that he committed second degree assault, and (5) the prosecutor committed misconduct. We affirm.

## FACTS

¶2 On April 27, 2006, while Ronald Clark, the chief criminal deputy for the Pacific County sheriff's department, was driving home on the beach in an unmarked police vehicle, he noticed Hale illegally driving a truck on the clam beds, driving in the surf, and spraying ocean water over his vehicle. After Hale's truck passed Clark, Clark turned on his emergency lights and attempted to pull Hale over. Clark learned from his dispatcher that Hale was driving a stolen truck.

¶3 Instead of pulling over, Hale let one of his passengers out, while his other female passenger stayed in the truck,

and they continued to speed down the beach.[1] As Clark pursued him, Hale began to drive to the other end of the beach, where additional police officers had parked their vehicles. To avoid the officers, Hale jumped his vehicle over a canal, causing his vehicle to go airborne. He landed on the beach approach, which was occupied by other parked cars and pedestrians, and then he turned into the town of Ocean Park. Clark called for additional police assistance and asked Deputy Robert Langendorfer to take the lead in pursuing Hale because Langendorfer was driving a fully marked police car.

¶4 Hale began speeding and attempting to flee on the roadways. A high-speed police chase ensued. Police officers put down a spike tire strip to force Hale to stop, but he turned around to avoid it. He then headed north toward Clark, who was headed south. Clark slowed because he saw Hale driving directly toward him. Clark turned off into a side street, but Hale's vehicle still came so close to his that their mirrors almost touched. Clark testified that if he had not pulled over, he "would have been hit head-on." Report of Proceedings (RP) (Dec. 11, 2006) at 34. He also testified that he felt helpless, was apprehensive that he would sustain bodily injury, and was fearful when he took evasive action to avoid being hit by Hale's speeding truck.

¶5 Shortly after this incident, Clark terminated the police pursuit due to public safety concerns and because children were being let out of a nearby school. Hale fled the truck, but the police apprehended him approximately three hours later. The State charged Hale with second degree assault with a deadly weapon, a motor vehicle (count I). It also alleged that the crime was aggravated by the following circumstances: (1) the offense was committed against a law enforcement officer, Clark, who was performing his official duties, (2) Hale knew Clark was a law enforcement officer, (3) Clark's status as a law enforcement officer is not an

---

[1] The speed limit on the beach is 25 miles per hour, and Clark estimated that Hale's speed ranged from 40 to 55 miles per hour.

element of the offense, and (4) Hale was armed with a deadly weapon. In addition, the State charged Hale with attempting to elude a police vehicle (count II).

¶6 During trial, Clark testified that when he interviewed Hale, Hale told him that he drove into oncoming traffic "[t]o back the cops off." RP (Dec. 11, 2006) at 35. Langendorfer witnessed Hale's driving and testified that he believed that Hale was going to hit Clark head-on. He also testified that he "got the impression [Hale] was trying to cause an accident." RP (Dec. 11, 2006) at 130. A motorist testified that, while driving in the opposite direction, he saw Hale approaching at approximately 70 miles per hour and Hale almost hit him when Hale moved into oncoming traffic to pass other vehicles. And another motorist testified that Hale nearly hit him when Hale failed to stop at a stop sign and that he saw Hale almost hit another car as it pulled out of a parking lot.

¶7 Hale testified that he had been up for five days before the incident, was coming down from a drug high, and, when the police questioned him, he nodded in and out of consciousness and could not remember the questioning. He admitted that he was not taking his prescribed mental health medications. Nonetheless, Hale testified that he was speeding because he did not want the police to apprehend him and he wanted to leave town. He also testified that he was not deliberately going into oncoming traffic, was not trying to run other vehicles off the road, and did not try to hit Clark or make him apprehensive. Finally, Hale testified that he did not have control over his vehicle when he approached Clark and did not intend to drive into southbound traffic.

¶8 The jury found Hale guilty on both counts: second degree assault and attempting to elude a police vehicle. In addition, the jury returned a special verdict finding that Hale committed second degree assault against a law enforcement officer who was performing his official duties, Hale knew the victim was a law enforcement officer, and the victim's status as a law enforcement officer was not an

element of the offense. The trial court sentenced Hale to an exceptional sentence of 100 months on count I and a standard range sentence of 29 months on count II, with the sentences to be served concurrently.

¶9 Hale appeals.

## ANALYSIS

### EXCEPTIONAL SENTENCE

¶10 Hale argues that the trial court abused its discretion in imposing an exceptional sentence because it failed to make findings and conclusions determining whether the aggravating circumstances the jury found were substantial and compelling to warrant his exceptional circumstance. Hale contends that because the trial court failed to make these findings and conclusions, we must remand for resentencing.

¶11 We agree that the trial court initially failed to enter any written findings as required by former RCW 9.94A.535 (2005).[2] On January 18, 2008, in order to complete our record for review, we remanded this case to the trial court for entry of findings of fact and conclusions of law under former RCW 9.94A.535, based on the record before the trial court without taking additional evidence. After the trial court entered findings of fact and conclusions of law, Hale filed a supplemental brief in which he assigned error to every finding and conclusion.

¶12 Generally, the jury must find the facts supporting an aggravated sentence beyond a reasonable doubt. *See* former RCW 9.94A.535(2)-(3); former RCW 9.94A.537(2), (5) (2005); *Blakely v. Washington*, 542 U.S. 296, 301-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435

---

[2] Former RCW 9.94A.535 provided in relevant part that "[w]henever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law."

(2000); *State v. Recuenco*, 163 Wn.2d 428, 440, 180 P.3d 1276 (2008); *State v. Suleiman*, 158 Wn.2d 280, 292-93, 143 P.3d 795 (2006). If the jury unanimously finds the alleged aggravating circumstances beyond a reasonable doubt, then the trial court may sentence the defendant under former RCW 9.94A.535 to an exceptional sentence "if it finds . . . that the facts found are substantial and compelling reasons justifying an exceptional sentence." Former RCW 9.94A.537(5).

¶13 The legislature requires that whenever the trial court imposes a sentence outside the standard range, it "shall set forth the reasons for its decision in written findings of fact and conclusions of law." Former RCW 9.94A.535. The legislature also established that if the trial court imposed a sentence outside the standard range, then "the sentence is subject to review only as provided for in RCW 9.94A.585(4)."[3] Former RCW 9.94A.535.

¶14 Prior to *Blakely*, our Supreme Court established a three-part analysis to review the trial court's findings and conclusions, justifying an exceptional sentence under RCW 9.94A.585. *State v. Fowler*, 145 Wn.2d 400, 405, 38 P.3d 335 (2002).

> First, the court must determine if the record supports the reasons given by the sentencing court for imposing an exceptional sentence. As this is a factual inquiry, the trial court's reasons will be upheld unless they are clearly erroneous. The appellate court must next determine, as a matter of law, whether the reasons given justify the imposition of an exceptional sentence. The sentencing court's reasons must . . . be "substantial and compelling." Former RCW 9.94A.120(2) [(2000)]. Finally, the court is to examine whether the sentence

---

[3] RCW 9.94A.585(4) provides:

To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

is clearly excessive or clearly lenient under the "abuse of discretion" standard. Former RCW 9.94A.210(4) [(2000)].

*Fowler*, 145 Wn.2d at 405-06 (citations omitted).

¶15 After *Blakely*, the trial court retains its discretion to determine whether the jury's findings "are substantial and compelling reasons justifying an exceptional sentence," former RCW 9.94.537(5), but the jury now determines the factual basis for the aggravating circumstances and the trial court is "left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence." *Suleiman*, 158 Wn.2d at 290-91. Although the legislature has amended our statutes to conform to *Blakely*, RCW 9.94A.535 still requires a trial court to enter written findings of fact and conclusions of law to justify its imposition of *any* sentence outside the standard range. The statutory language is clear and the trial court must enter findings and conclusions justifying its exceptional sentence, as it did here.[4] *See State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000) ("If the language of a statute is clear on

---

[4] "We will not add to or subtract from the clear language of a statute even if we believe the legislature intended something else but did not adequately express it. We will, however, add or subtract language if doing so is required to make the statute rational. And we will avoid a literal reading of the statute if it would result in an unlikely, absurd, or strained interpretation." *State v. Castillo*, 144 Wn. App. 584, 591, 183 P.3d 355 (2008) (citations omitted). Here, the legislature's requirement that the trial court enter findings and conclusions when the jury finds the aggravating circumstances beyond a reasonable doubt teeters on a strained interpretation. No such strained interpretation results when the court enters findings after imposing a sentence below the standard range or when the defendant waives the jury's findings. *See* former RCW 9.94A.535(1); former RCW 9.94A.537(2). First, in an innocuous effort to justify its exceptional sentence, the trial court may come dangerously close to making additional findings to support the exceptional sentence in contravention of *Blakely*. *See, e.g., State v. Hagar*, 158 Wn.2d 369, 374, 144 P.3d 298 (2006); *Suleiman*, 158 Wn.2d at 294 n.5; *State v. Saltz*, 137 Wn. App. 576, 583-84, 154 P.3d 282 (2007); *State v. Van Buren*, 136 Wn. App. 577, 580, 150 P.3d 597 (2007). Alternatively, the trial court, as here, will consume valuable judicial resources by entering findings that reiterate the jury's special verdict in its findings and conclusions when it imposes an exceptional sentence. Absent legislative directive, it may suffice for the trial court to attach the jury's verdict to the judgment and sentence, instead of entering findings and conclusions, when the jury finds aggravating circumstances and it imposes an exceptional sentence. We do not decide that issue here because the trial court entered findings and conclusions at our direction.

its face, courts must give effect to its plain meaning and should assume the Legislature means exactly what it says. . . . A statute that is clear on its face is not subject to judicial interpretation.").

 ¶16 After *Blakely*, no case has fully addressed an analysis under RCW 9.94A.535 when the jury finds the aggravating circumstances and the trial court imposes an exceptional sentence above the standard range.[5] We hold that we will review those findings and conclusions under a modified three-pronged analysis. Under the first prong, instead of determining whether the record supports the reasons the sentencing court gave for imposing an exceptional sentence, we must review whether the record supports the jury's special verdict on the aggravating circumstances. *See* RCW 9.94A.585(4); *Fowler*, 145 Wn.2d at 405.

A. The Trial Record Supports the Jury's Findings

¶17 First, we review whether the record supports the jury's findings. "As this is a factual inquiry, the [jury's] reasons will be upheld unless they are clearly erroneous." *Fowler*, 145 Wn.2d at 405. The legislature has provided statutorily enhanced penalties for acts against police officers as a matter of public policy. *See* former RCW 9.94A.535(3)(v).[6] Clark is a law enforcement officer and was attempting to stop Hale. Clark was performing his official duties and he was in a vehicle with flashing lights. Clark's status as a law enforcement officer is not an element of

---

[5] *See Suleiman*, 158 Wn.2d at 290-92; *Saltz*, 137 Wn. App. at 580-82 (evaluating exceptional sentence under second prong of three-prong analysis when defendant stipulated to aggravating factors to avoid the jury's special verdict on those facts). *But see State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005); *State v. McKee*, 141 Wn. App. 22, 32-33, 167 P.3d 575 (2007); *State v. Smith*, 124 Wn. App. 417, 435, 102 P.3d 158 (2004), *aff'd*, 159 Wn.2d 778, 793, 154 P.3d 873 (2007) (all employing the three-prong analysis when the trial court imposes a sentence below the standard range and, therefore, the trial court, not the jury, found mitigating circumstances beyond a reasonable doubt).

[6] Former RCW 9.94A.535(3)(v) provided: "The offense was committed against a law enforcement officer who was performing his or her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer is not an element of the offense."

second degree assault. Therefore, the jury's findings were not clearly erroneous.

B. The Trial Court's Reasons Were Substantial and Compelling

¶18 We next review de novo whether the trial court's reasons for imposing an exceptional sentence are substantial and compelling. *See Fowler*, 145 Wn.2d at 406. Here, the trial court carefully worded its findings to reiterate the jury's special verdict and avoided entering any additional findings that would have violated Hale's right to have a jury find beyond a reasonable doubt any factor used to increase his sentence. The trial court's findings of fact noted that the jury found Hale guilty and returned a special verdict, and recited verbatim the jury's special verdict. Then it concluded, as a matter of law, that (1) the jury found the aggravating circumstances, (2) "the facts found by the jury in the special interrogatory are substantial and compelling reasons justifying an exceptional sentence," (3) a sentence above the standard range was "in the interest of justice and [was] consistent with the purposes of the Sentencing Reform Act [of 1981, chapter 9.94A RCW]," and (4) the exceptional sentence was "appropriate to ensure that punishment is proportionate to the seriousness of the offense." Clerk's Papers at 110. In addition, even before the legislature added this enumerated aggravating circumstance, we upheld the trial court's imposition of an exceptional sentence when the defendant assaulted a law enforcement officer who was performing his or her official duties. *See, e.g, State v. Anderson*, 72 Wn. App. 453, 465-66, 864 P.2d 1001 (1994); *State v. Kidd*, 57 Wn. App. 95, 104, 786 P.2d 847 (1990). The trial court's reasons for imposing an exceptional sentence were substantial and compelling.

C. The Sentence Is Not Clearly Excessive

¶19 Finally, we examine whether the trial court abused its discretion by imposing a sentence that is clearly excessive. *See Fowler*, 145 Wn.2d at 406. The trial court did not

abuse its discretion in imposing Hale's sentence. Hale had an offender score of 9; therefore, the standard range for second degree assault was 63 to 84 months. Because second degree assault is a class B felony, the maximum sentence was 120 months. *See* RCW 9A.20.021(1)(b). The trial court imposed an exceptional sentence of 100 months, roughly the midrange between the high end of the standard range and the maximum sentence. The trial court did not abuse its discretion and the sentence was not clearly excessive.

¶20 We affirm Hale's exceptional sentence.

¶21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PENOYAR, J., concurs.

QUINN-BRINTNALL, J., concurs in the result only.