IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32811-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON D. FLETT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — A jury found Jason Flett guilty of first degree murder and

returned a special verdict finding he committed the crime with deliberate cruelty.

Relying on the aggravating factor of deliberate cruelty, the court sentenced Mr. Flett to an

exceptional sentence. On appeal, Mr. Flett argues the State presented insufficient

evidence to support a finding of deliberate cruelty. Mr. Flett additionally challenges the

trial court's imposition of legal financial obligations (LFOs) and raises a number of

challenges to the DNA[1] collection fee. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

On December 10, 2013, the State charged Jason Flett with the premeditated first

degree murder of Ramona Childress. The amended information alleged the commission

---

[1] Deoxyribonucleic acid

of the offense manifested deliberate cruelty to the victim—an aggravating factor. The case went to trial in August of 2014.

Testimony at trial showed that on October 29, 2012, Mr. Flett drove Ms. Childress and Isha Al-Harbi (his then-girlfriend) to a remote residence in Elk, Washington. The residence, which was on a 90-acre lot, belonged to the family of Mr. Flett's half-brother, Skylar Jones.

Upon reaching the driveway to the residence, Mr. Flett parked the car, got out, walked to the passenger side of the vehicle, opened the passenger door, and dragged Ms. Childress out of the car by her hair. He then hit Ms. Childress multiple times with a closed fist. Ms. Childress screamed and begged him to stop.

Mr. Flett choked Ms. Childress for five to eight minutes and Ms. Childress "put up a fight." Report of Proceedings (RP) at 158. After choking her, Mr. Flett pulled out a knife and stabbed Ms. Childress multiple times in the neck.

At this point in the attack, Mr. Flett left Ms. Childress on the ground and walked the distance of the driveway—about a quarter mile—to the Jones's home. Mr. Flett was gone for about five minutes. During that time, Ms. Al-Harbi remained at the car with Ms. Childress on the ground outside. She remembers Ms. Childress gasping for air and gurgling blood during this time.

When Mr. Flett arrived at the residence, he asked for help and instructed Mr. Jones to get shovels. Together, Mr. Flett and Mr. Jones walked back down the driveway to where Ms. Childress's body was located.

Upon Mr. Flett's return to the car and Ms. Childress's body, Ms. Al-Harbi informed him that Ms. Childress was still breathing. In response, Mr. Flett hit Ms. Childress repeatedly in the face with the shovel—it sounded like "metal . . . hitting a rock." RP at 128.

Mr. Flett then dug a shallow hole in the woods near the driveway. Together, Mr. Flett and Mr. Jones dragged Ms. Childress's body to the shallow grave and buried her.

Nearly a year later, in the fall of 2013, an anonymous tip led investigators to the Jones's residence and Ms. Childress's body was discovered.

A medical examiner confirmed the body was Ms. Childress, that she had suffered cranial, facial, and neck trauma, that she sustained at least eight stab wounds to the neck, and that her facial bones were fractured into hundreds of small pieces. The degree of facial fracturing suggested that Ms. Childress likely suffered brain damage. The medical examiner concluded the cause of death was homicidal violence.

The State presented testimony that Mr. Flett killed Ms. Childress because she had information that would put him in jail.

During the jury instruction conference, defense counsel objected to the jury being instructed on deliberate cruelty, arguing that the State presented insufficient evidence to

3

support such an instruction. The court concluded the State presented sufficient evidence for the matter to go to the jury.

The jury found Mr. Flett guilty of first degree murder with a deadly weapon. Additionally, the jury determined Mr. Flett committed the crime with deliberate cruelty.

At sentencing, the court found that the facts justified an exceptional sentence. The court also imposed $800 in mandatory LFOs, including a $100 DNA collection fee.

Mr. Flett timely appeals.

## ANALYSIS

Mr. Flett argues the trial court erred in instructing the jury on deliberate cruelty because the State did not present evidence that he acted gratuitously. Mr. Flett also challenges the imposition of mandatory LFOs and raises a number of constitutional arguments challenging the validity of the DNA collection fee. Each argument is addressed in turn.

*I. Substantial evidence was presented to support a finding of deliberate cruelty*

Mr. Flett contends the State did not present sufficient evidence to permit a rational trier of fact to find the existence of the aggravator, and because of the insufficient evidence, the court erred in instructing the jury on deliberate cruelty.

A party is entitled to have the jury instructed on its theory of the case if there is sufficient evidence to support that theory. *State v. Williams*, 132 Wn.2d 248, 259, 937 P.2d 1052 (1997). "On the other hand, it is prejudicial error to submit an issue to the jury

4

when there is not substantial evidence concerning it." *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). Substantial evidence means evidence in the record of a sufficient quantity to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

When determining whether the evidence was sufficient to warrant an instruction, the appellate court must view the evidence in the light most favorable to the party that requested the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). "Mere possibility, suspicion, speculation, conjecture, or even a scintilla of evidence, is not substantial evidence." *State v. Taplin*, 9 Wn. App. 545, 557, 513 P.2d 549 (1973).

"'Deliberate cruelty' requires a showing 'of gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself.'" *State v. Gordon*, 172 Wn.2d 671, 680, 260 P.3d 884 (2011) (quoting *State v. Tili*, 148 Wn.2d 350, 369, 60 P.3d 1192 (2003)). The cruelty must be "'of a kind not usually associated with the commission of the offense in question.'" *State v. Copeland*, 130 Wn.2d 244, 296, 922 P.2d 1304 (1996) (quoting *State v. Crane*, 116 Wn.2d 315, 334, 804 P.2d 10 (1991), *overruled on other grounds by In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)). This is not to say that the additional criminal activity that is not an element of the charged crime must occur in order to find the existence of the aggravator.

5

> [A]n exceptional sentence can be based on facts that make the crime unusually severe, even if those facts relate to an element of the crime. Accordingly, a trial court should be able to impose an exceptional sentence for unusually cruel acts, even when those acts were done for the purpose of accomplishing the crime.

13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3902, at 393 (2d ed. 1998) (footnote omitted).

The existence of deliberate cruelty, as with other aggravating factors, must be found beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

In *Gordon*, the court determined sufficient evidence existed to support a finding of deliberate cruelty when evidence showed that the defendants, who were convicted of second degree murder, "savag[ely] beat" the victim prior to the victim's death. 172 Wn.2d at 681. There, a verbal confrontation between the victim and the defendants escalated to a point where the victim was on the ground with multiple defendants around him. *Id.* at 674, 681. The victim was no longer a threat to the defendants. Nonetheless, the defendants placed him in a chokehold, continued hitting him, stomped on his head, and kicked him repeatedly. *Id.* at 681. Although alive when the defendants left him, the victim died en route to the hospital. *Id.* at 674-75. The court concluded there was sufficient evidence to support a finding that the defendants acted with deliberate cruelty. *Id.*

Similarly, in *Copeland*, the defendant was convicted of premeditated murder as well as felony murder with rape in the first or second degree as the predicate offense. 130 Wn.2d at 250-51. The defendant received an exceptional sentence based on multiple aggravating factors, one of which was deliberate cruelty. *Id.* at 294-97. On review, the Washington Supreme Court upheld the exceptional sentence and in particular the deliberate cruelty aggravating factor, explaining: "The strangulation, rape, multiple stab wounds, and stabbing with a fork, with attacks occurring in at least two locations in the victim's home, show a prolonged, exceedingly violent assault on the victim." *Id.* at 297. Because the conduct far exceeded that required for conviction of premeditated murder and felony murder, the court found the crime was committed with gratuitous violence that amounted to deliberate cruelty.

Conceding the State presented evidence demonstrating multiple wounds had been inflicted on Ms. Childress, Mr. Flett argues multiple wounds, alone, are insufficient to prove deliberate cruelty. In support of his contention, he cites *State v. Serrano*, 95 Wn. App. 700, 977 P.2d 47 (1999) and *State v. Payne*, 58 Wn. App. 215, 795 P.2d 134 (1990). In both *Serrano* and *Payne*, evidence demonstrated the victim was shot numerous times—five in *Serrano*, six in *Payne*. Each court declined to find the existence of the aggravator based on the multiple wounds, finding that inflicting multiple wounds does not, by itself, suggest the defendant acted gratuitously or inflicted pain as an end in itself.

7

Here though, the State presented evidence suggesting far more than that Ms. Childress suffered multiple wounds. The drawn-out attack could permit a jury to find that Mr. Flett intended to inflict physical, psychological, or emotional pain as ends in themselves. And it established that Mr. Flett attacked Ms. Childress in an unnecessarily barbaric and cruel manner—even for the crime of premeditated murder. Similar to *Copeland*, where the defendant strangled, raped, and stabbed the victim with a fork, the attack here was an exceedingly violent and prolonged assault. Evidence was sufficient for the court to instruct the jury on deliberate cruelty.

The jury, in turn, could assess whether the evidence was credible. To the extent Mr. Flett is challenging the jury's finding, this court reviews "whether the record supports the jury's special verdict on the aggravating circumstances" under the clearly erroneous standard. *State v. Hale*, 146 Wn. App. 299, 307, 189 P.3d 829 (2008); *State v. State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). Here, as discussed above, there was sufficient evidence to support the jury's finding of the aggravating circumstance. It is not clearly erroneous.

## *II. LFOs*

Mr. Flett challenges the trial court's imposition of mandatory LFOs, as well as the constitutionality of the DNA collection fee statute.

Mr. Flett challenges the trial court's imposition of LFOs, arguing the court erred when it imposed obligations without first conducting an individualized inquiry as

8

required by RCW 10.01.160(3). As a preliminary matter, this court must consider whether to accept review of Mr. Flett's challenge. Mr. Flett made no objection to the finding that he was able to pay the costs imposed at the time of sentencing and thereby failed to preserve a claim of error. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015) ("[u]npreserved LFO errors do not command review as a matter of right"). Nonetheless, this court has discretion to review the challenge, and a majority of the panel chooses to exercise such discretion.

RCW 10.01.160(3) requires a court to consider a defendant's present or future ability to pay LFOs prior to imposing discretionary costs. This requirement does not extend to mandatory LFOs—"for *mandatory* legal financial obligations, the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing these obligations." *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Here, the LFOs imposed—a $500 victim assessment, a $200 criminal filing fee, a $100 DNA collection fee, and $5,750 in restitution—were mandatory. RCW 7.68.035; RCW 36.18.020(2)(h); RCW 43.43.7541; RCW 9.94A.753(7). As a result, the trial court was not required to make an individualized inquiry and there was no error.

### III. Substantive due process and the DNA collection fee

Mr. Flett next argues the mandatory imposition of the DNA collection fee (RCW 43.43.7541) violates substantive due process as applied to him. This argument is also raised for the first time on appeal, but unlike Mr. Flett's LFO challenge, he does not ask

9

this court to exercise discretion to consider it. Presumably he contends the error is "manifest error affecting a constitutional right," which is an exception from RAP 2.5(a)'s requirement of issue preservation. RAP 2.5(a)(3).

To qualify for the exception provided by RAP 2.5(a)(3), an appellant must demonstrate "(1) the error is manifest and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). An error will be considered manifest when there is actual prejudice, meaning a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015) (citing *State v. Gordon*, 172 Wn.2d at 676. "[T]he focus of the actual prejudice [inquiry] must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

RCW 43.43.7541 requires every felony sentence imposed on an adult to include a $100 DNA fee. The funds are applied toward state and local costs of maintaining a DNA database that facilitates future criminal identification. *State v. Brewster*, 152 Wn. App. 856, 860, 218 P.3d 249 (2009). Mr. Flett admits this is a legitimate state interest. Appellant's Br. at 26. He contends, however, that the legislation cannot survive even the most deferential "rational basis" review if it is applied to individuals who cannot afford to pay the fee, and that he is such an individual. *Id.* at 25.

A state may not invidiously discriminate against, or arbitrarily punish, indigent defendants for their failure to pay fines they cannot pay. *State v. Johnson*, 179 Wn.2d 534, 552, 315 P.3d 1090 (2014) (citing *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)). So far, however, this court has refused to entertain a substantive due process challenge to the DNA fine on a threshold basis: no challenger to date has presented a record on appeal that is sufficient to review the argument. *E.g., State v. Stoddard*, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016).

The record on this appeal is similarly inadequate. It contains no information that Mr. Flett lacks funds to pay a $100 fee. While he directs us to his statutory indigence for purposes of court appointment of appellate counsel, evidence of statutory indigence is unhelpful because the cost of appellate representation in a criminal matter "exponentially exceeds $100." *Id.* at 228. Mr. Flett has failed to show manifest error and we decline to review his substantive due process challenge.

*IV. Equal protection and the DNA collection fee*

In a second and distinct challenge to the mandatory $100 DNA collection fee, Mr. Flett argues that RCW 43.43.7541 offends equal protection because it irrationally requires some defendants (repeat offenders) to pay the fee multiple times. He contends that when an offender has already paid a DNA collection fee and submitted his DNA, imposing a second fee (whether or not the second sample is collected), is not rationally

11

related to the admittedly legitimate purpose of collecting, analyzing, and retaining felony offenders' DNA.

This argument is made for the first time on appeal. Again, Mr. Flett fails to indicate on what basis review is appropriate. And again, it is assumed that he believes review is appropriate under RAP 2.5(a)(3).

While there is evidence that Mr. Flett has been convicted of other felonies, the record before this court contains no evidence that Mr. Flett has previously paid the collection fee. This court cannot assume, as Mr. Flett seems to ask it to, that he has in fact previously paid this fine. Because the record is insufficient to demonstrate manifest prejudice, we need not review the claim. *See* RAP 2.5(a)(3).

Further, even if review were appropriate, this court has previously held that RCW 43.43.7541 is neutral on its face, and that absent evidence of the legislature's discriminatory intent in enacting the statute, there is no violation of constitutional equal protection. *State v. Johnson*, No. 32834-1-III, 2016 WL 3124893 (Wash. Ct. App. June 2, 2016). Mr. Flett has not made any showing of discriminatory intent. As a result, Mr. Flett's equal protection challenge fails.

*V. Second collection of DNA sample*

Finally, Mr. Flett argues the trial court erred by ordering him to submit another DNA sample when he already submitted a sample in connection with a previous conviction. Washington law provides: "If the Washington state patrol crime laboratory

12

already has a DNA sample from an individual for a qualifying offense, a subsequent

submission is not required to be submitted." RCW 43.43.754(2). Importantly, the statute

does not mandate that *only* one sample be taken; instead, the statute gives the trial court

discretion whether to order the collection of a DNA sample from an offender who has

already provided one. Here, no evidence suggests that the court abused its discretion,

particularly given that Mr. Flett supplies no evidence to show he already provided a DNA

sample. *See State v. Thornton*, 188 Wn. App. 371, 373-74, 353 P.3d 642 (2015).

## VI. Statement of Additional Grounds

In a pro se statement of additional grounds, Mr. Flett raises two additional

arguments. He challenges the admission of evidence as violative of ER 404(b) and

further argues he received ineffective assistance of counsel.

*ER 404(b).* Mr. Flett argues the trial court abused its discretion in admitting

evidence of his assaults of Ms. Al-Harbi. Under ER 404(b), evidence of a defendant's

other crimes, wrongs, or acts, is not admissible to show the defendant's character. It is,

however, admissible for certain other limited purposes. ER 404(b). Before admitting the

evidence, the court must: "(1) find by a preponderance of the evidence that the

misconduct occurred, (2) identify the purpose for which the evidence is sought to be

introduced, (3) determine whether the evidence is relevant to prove an element of the

crime charged, and (4) weigh the probative value against the prejudicial effect." *State v.*

13

*Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). "It must conduct this analysis on the record." *State v. Slocum*, 183 Wn. App. 438, 448, 333 P.3d 541 (2014).

In the present case, the defense filed a motion in limine to exclude evidence of Mr. Flett's prior assaults of his girlfriend, Ms. Al-Harbi. Mr. Flett argues that admission of the evidence was inappropriate because the assaults on Ms. Al-Harbi were not established to have occurred, and were not relevant to the crime charged.

In support of his argument that there was no evidence the attacks occurred, Mr. Flett asserts the State did not present evidence of a conviction for assaulting Ms. Al-Harbi. Evidence of a conviction is not required, though. Rather, the court must only determine that the proffering party established the occurrence of the prior bad act by a preponderance of the evidence. Here, where there was testimony from Ms. Al-Harbi concerning the specifics of the attacks, there was sufficient evidence for the court to find by a preponderance of the evidence that the attacks occurred.

Mr. Flett additionally argues that the specific testimony that he hit Ms. Al-Harbi with a crow-bar was not relevant. Part of the defense's trial strategy was to implicate Ms. Al-Harbi in the crime. As a result, the evidence became relevant in order to rebut the attack on Ms. Al-Harbi's credibility. The evidence was admitted to explain why Ms. Al-Harbi complied on the night of the murder as well as why she remained silent after the murder. The court did not abuse its discretion.

Mr. Flett also challenges the admission of Skylar Jones's testimony that Mr. Flett was motivated to murder Ms. Childress because she had information that would send him to prison. He argues the State could not prove the supposed criminal activity actually occurred. This testimony was a subject of a motion in limine. The State informed the court it intended to elicit such testimony, and argued it was admissible to establish Mr. Feltt's motive, an exception to ER 404(b). Defense counsel did not object, and rather merely requested that the witness refrain from saying "'back to prison.'" RP at 93. Mr. Flett cannot argue for the first time on appeal that the testimony was inadmissible. RAP 2.5(a).

Finally, Mr. Flett challenges other portions of Mr. Jones's testimony, including references to Mr. Flett wanting to bury his mother, and comments concerning Mr. Flett's intent to harm a friend over a debt of $40. This testimony, while heard by the jury, was objected to and the trial court sustained the objections and provided the jury with limiting instructions. We presume the jury followed the court's instruction and disregarded the testimony. *State v. Stenson*, 132 Wn.2d 668, 730, 940 P.2d 1239 (1997). The court did not abuse its discretion.

*Ineffective assistance of counsel.* Mr. Flett alleges he received ineffective assistance of counsel, because his trial counsel did not cross-examine Ms. Al-Harbi during the motion in limine hearing. A successful ineffective assistance of counsel claim requires the defendant to show (1) that counsel's performance was deficient and (2) that

15

No. 32811-2-III
*State v. Flett*

the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This court need not consider both prongs of *Strickland* if a petitioner fails one. *Id.* at 697.

"Prejudice" for this purpose is the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mr. Flett has failed to demonstrate prejudice. Mr. Flett fails to demonstrate anything that would have been revealed in cross-examination that would have caused Ms. Al-Harbi's testimony to be excluded. Mr. Flett has not established ineffective assistance of counsel.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

16